May it please the Court, I'm William Cole. I'm with the Ohio Attorney General's Office and I represent the appellants. I'd like to reserve three minutes for rebuttal. Your Honor, the District Court's order preliminarily enjoining Ohio from enforcing its Precious Metals Dealers Act anywhere should be reversed because the statute regulates commercial conduct, not speech. The speech here is merely evidence of the act of holding oneself out to the public. However, even if this Court concludes that the act implicates commercial speech, it should not strike down, the act should not be struck down as facially invalid because the act of holding out to the public is willing to purchase precious metals does not necessarily involve commercial speech. This is now a licensing statute and only a licensing statute? It is, it does apply, there is a provision that applies to non-licensees, it's primarily a licensing statute. 4728.12 does impose some record-keeping requirements on non-licensees, but the vast majority of the statute is licensing. So it says if you hold yourself out as a, what exactly is the language, hold yourself out as what? There's two components, you have to be engaged in the business of purchasing precious metals, you have to hold yourself out to the public as willing to purchase precious metals. Both of those elements have to be met. It's kind of like practicing law to some extent. Yeah, there's a number, practicing law is usually the first thing that comes out there. There's a number of Ohio licensing statutes that use holding out to the public. Accountants, architects, psychologists, engineers have similar language and holding out is different than proposing a commercial transaction, which is usually the trigger for commercial speech. I think holding out is critically different and I think an appropriate definition, although this statute is not cited in our brief, comes from the attorney licensing statute 4705.07 of the Ohio Revised Code, and that is an act or acts, the purpose of which is to induce the public at large, not just potential sellers, but the entire, the world, the public at large, to believe the person is willing to indiscriminately purchase precious metals from the public. Does this mean that the class of people that would not have to be licensed, that this licensing provision would not apply to, would be simply people who would sell precious metals, who would not be doing it on a commercial basis, like friends, family, that kind of thing? Yeah, the act is designed, well, I think that goes to the frequency and being engaged in the business. It's not to, the intent of the licensing scheme is not to go after the little guy, the occasional seller who sells to a friend or a family or loved one, or even necessarily someone who might only sell to a select group. So, no, it's not. Garage sale, that type of thing? Sorry? Garage sale? Right, no, you would, unless you held a garage sale every weekend, every day, and were inviting people from the public, you know, to come in, you'd have to have both elements there. It doesn't apply to coin collectors, that's what you're saying? As long as, it would apply if a coin dealer or anyone engaged in any business regularly were purchasing items with precious metals for the value of the precious metal, rather than the numismatic value of a historical coin that derives value from how old it is. It would make a distinction between numismatics and the business of selling or buying gold, silver, platinum, whatever. If you're purchasing for the value of that gold, silver, platinum, and you otherwise are engaged in the business and hold yourself out to the public, then, yes, you are subject to the statute. If you're, as you said- You know, we see all these ads on TV now for people who want you to buy from them some gold, silver, whatever. They would be required to be licensed, I take it. Well, the- You know the ads I'm talking about you see frequently on- I see them on the street, yeah. In fact, Liberty Coins is two blocks from where I grew up. Well, it goes to buying. It doesn't- the statute, you have to have a license in order to buy from the public. If you only sold gold and silver, maybe you had a stash and you obtained it, it's the willing to buy from the public that triggers the ad. Only. Well, that's the language. That's the expressed language of the statute. If what you're doing then is selling gold to the public, it's not covered? Not covered, correct. It is to purchase from the public. Now, if you did both, as long as you were doing some purchasing, engaging in that business and holding yourself out, then you would be subject to the statute. That's right. But as I indicated here, what is critical- And the statute specifically has a- within its definition of precious metal dealer, that's 472801, does mention advertising and solicitation. And perhaps at first blush, the thought is, well, certainly that has to be commercial speech. And that's what the district court concluded. But it's really, that's not the case. Those are illustrative examples of how one can hold oneself out. And it is not the speech that's being regulated. It's the holding out. As I indicated, it's not the proposing the commercial transaction. It's not the inviting people in. It is letting the world know, letting the public know that my business, the person, will purchase indiscriminately from the public items containing precious metals. How did the district court distinguish this case situation from a person who holds herself or himself out as a lawyer? Well, the court found, Judge Watson said essentially, they both have holding out, but this is a different kind of holding out. Although, you know, there wasn't, the case, the reasoning, we didn't find it very persuasive. Obviously, that's why we're appealing. So he said, I don't think the district court said that any form of holding out is automatically commercial speech. I think he focused, and I believe where the court erred, was when you throw in the words a willingness to purchase. I believe at that point the district court said, well, that's tantamount to proposing a commercial transaction. So I indicated that's not the same. That's not the definition of holding out to the public. It's distinctly different, and it's critically different. It's actions. And so the purpose of this statute, it's not just to protect consumers. It's to protect the public. And again, there is a broader reach. One thing I think the district court, another problem the district court had with this statute was not just the statutory exceptions, but that if the purpose of the act is to protect the public, why isn't it also going after the small guy who could recover stolen goods or could engage in an unconscionable purchase, try to trick somebody maybe who was elderly or infirm and not aware what's going on. Well, that's not, there are consumer statutes there that do that. This statute was looking at, was trying to regulate through licensing those who are regularly conducting this business. Would the decision of the district court here affect the licensing of plumbers and electricians and all of those kind of occupations that states normally require license for? Well, not directly, of course. It would be limited to this, but yeah, I think that there is a precedent. I think that reasoning applied, then I think that's part of the danger of the district court decision, is it is saying that these other acts, many statutes, not just in Ohio, that have these holding out to the public provisions are potentially suspect as being assailed on constitutional grounds. And again, the district court didn't seem to be able, in our opinion, wasn't able to break the difference between speech and conduct. This is a conduct statute, you don't need to get to Central Hudson, you don't need to get to that analysis. The statute, it's the act of holding out to the public through any means, not just advertising and solicitation. There are ways one can hold oneself out, accepting the public, indiscriminate sales of buying from the public, serving public customers indifferently, acting through a broker or a middleman. One thing that frankly came to mind last night would be displaying your merchandise out. Now that may be a stronger indication of a willingness to sell, it still would cause a reasonable person to believe that this person is willing to buy. So from that aspect, taking all that into consideration, the statute should not be struck down on any grounds, it's a conduct regulation. But even if this court is inclined to find that it implicates speech, the act should not have been struck down spatially. It wasn't struck down, I understand it's a preliminary injunction, but the basis of that injunction was that the act was spatially invalid. And therefore, and under discount tobacco and lottery, this court, even though it's a First Amendment case, applied the Slare No, No Set of Circumstances test. And there certainly are instances where one can hold oneself out. Our standard here is likelihood of success on the merits. That's correct, it's a preliminary injunction. I think the standard of review, because it's a constitutional First Amendment case, is de novo. Normally, preliminary injunctions are the abuse of discretion. The standard rational basis is what you, if the purpose of this statute, as you say, is conduct. I think one of the purposes the legislature said was to ferret out people who were dealing in stolen precious metal. Trying to cut back on thefts and restricting the flow of stolen goods, yes. And so, are you saying the rational basis is what the district court should have applied in reviewing the statute for preliminary, rather than intermediate scrutiny? Well, if it was a due process, I mean, they've got a vagueness challenge. They've got a Fourth Amendment, which wasn't before the district court here. I would think on equal protection or due process. I don't know on rationality if it's that critical on First Amendment. To answer your question, I certainly think the state certainly has a rational basis for Shenanigans and theft, money laundering, fraud, those various evils. Thank you, your honor. Thank you. May it please the court, your honors. Maurice Thompson, 1851, Center for Constitutional Law for Apelli Liberty Coins. Your honors, the First Amendment does not permit the state to impose a complex and But that is what the PMDA, Precious Metal Dealers Act, attempts to do. Accordingly- Well, it doesn't say only people who advertise. It says people who engage in the business of purchasing articles made of precious metals or jewels, including any form of advertisement or solicitation of customers. So it sounds like it's much broader than just people who advertise. That's right, your honor. I would like to clarify that throughout the brief and throughout the argument, and we footnote this in the brief, we use the term advertise as kind of an umbrella term to talk about promotional speech, promoting one's business to the public. How do you distinguish, counsel, all the other licensing statutes, which from the beginning of Anglo-American jurisprudence have been imposed by parliament and by state legislatures for the licensing of lawyers, plumbers, and so on? How do you make a distinction there? Well, two points about that, your honor. First of all, the burden is on the state in a case like this to put forward their arguments and their evidence. And so they've only cited a few other kinds of licensing laws. But what they failed to do is identify a law that is like this one. This is a distinguishable law. And you can see that when you look at the language. Wouldn't the same precedent apply to other licensing laws for occupations? Your honor, very unlikely. Of course, it depends upon the exact language. But this is very unique language. I think this language was passed at a time before the commercial speech doctrine was really developed. And what the state is attempting to do here is use advertising or promoting one's business as a surrogate for the size of the business. Basically, it's concluding that you must be a large purchaser of precious metals if you advertise. Now, that's exactly what the case was before the United States Supreme Court in Thompson v. Western States Medical Center. How are you going to distinguish between this and lawyers? Your honor, because the language is different. You just tell me, because I don't understand why this doesn't specifically apply as a precedent to all kinds of licensing statutes. Yes, your honor. It is, of course, illegal to practice law without a license. But it is not illegal. I cannot stress this enough. It is not illegal in Ohio to purchase precious metals without a license. It is perfectly legal to purchase precious metals without a license. It only becomes illegal if you speak out through commercial speech and say, we want to purchase precious metals. We buy gold. Are the signs that you see everywhere? Well, lawyers say to the public, I'm holding myself out as a lawyer to give legal advice to citizens and people who need advice. And that's the same thing they're doing here, isn't it? Well, that's right. Imagine a licensing regime where people could practice law unless they advertise their practices. And only then are they regulated. And there are a great number of people who are exempt from that law. It doesn't say advertise. It says holding out. Holding out to the public, which can only be done really through promotional speech. And then it's a willingness to purchase precious metals, which is a particular proposal for a commercial transaction. Mr. Thompson, there are at least two lawyers on this bench who started practicing law before lawyers were allowed to advertise. So if the thrust of your argument is the advertising thing rather than holding out, or are you talking about both of them? Your Honor, I believe that they're relatively synonymous. When the statute says holding yourself out, you think it is a First Amendment issue? Yes. And here's why I say that. Bear with me. Allow me to review the statute with you. A person, this is who is regulated, a person who is engaged in the business of purchasing articles made up of containing precious metals, if and only if, in any manner, including any form of advertising or solicitation, the person holds himself out to the public. It doesn't say only if. You put in that word. Yes, I put in only if. Well, call back up your own statute. Let's use the statute that the legislature passed. If, which to me, to us means also only if, in any manner, including any form of advertising or solicitation, the person holds himself out to the public as willing to purchase. So what we know from reading the statute and from our rules of construction is that it cannot be simply the fact that a person engaged in the business holds himself out or else the statute would be redundant and the if clause would be superfluous. We've got to provide meaning to the if clause. It has to have some meaning other than engaging in the business of purchasing precious metals. Open a shop, get a license, not buy the first dime of advertising. Do you think that that would be prohibited under the First Amendment? Your Honor, our understanding of the statute is if you run a small shop that purchases precious metals, you are not subject to the regulatory regime, the licensing laws, which are very onerous, unless you promote your business to the public as willing to purchase precious metals. So there are businesses in Ohio that purchase precious metals, but do not advertise, and they have not been penalized. You have to hold on to it for 30 days before you can sell it, and have to report daily to the police what you bought and everything like that? Right. If you advertise, you have to obtain a license. You have to pay a fee. You have to pay a fine of, in this case, as much as $150,000 in order to get the license so that you may speak more. That's got to be a big, big deal right now, $150,000. Well, they do impose the fine based upon the size of the business. And one of the issues here is the law has been in the book since the early 80s, but it was never really enforced. So the state has sent these cease and desist lawyers letters, and importantly, those letters say the violation of the act is the advertising. So for example, in Liberty Coins' case here, they say to Liberty Coins, you must cease and desist because you have violated the Precious Metal Dealers Act, and your violations are, one, your use of business cards, two, your sign in your window and your sign on the sidewalk, and then three, your newspaper advertisement. Those are the violations of the act, and that's why this is a free speech case. So if you put up, if you rent a street corner store and put up in the window, attorney at law, you got to, or in this case, coin purchaser or silver, however it's put up there, that would be holding out, I take it. It's the same way that if you put a sign on the side of a building that you're a lawyer, you're holding yourself out as a lawyer. Same thing. I think that's right. The distinction here, the key distinction here, Your Honor, is that Liberty Coins, nor others, are holding themselves out as licensed precious metal dealers. When you say you're a lawyer, you're basically implicitly saying I'm licensed by the state of Ohio because that's the only way that you can become a lawyer. But of course, you can buy precious metals without being licensed by the state of Ohio. Again, the underlying act of buying precious metals is perfectly legal unless you promote your business to the public as willing to purchase precious metals, which to the public is really a key there too, because how else do you promote to the public other than through advertising or solicitation, broadcasting, some form or another of protected speech? So that's really key. And in that essence, the case is a lot like this court's seminal decision in Pagan v. Frucci in that the conduct of parking on the street was at issue there, but it was legal to park your car on the street unless you put a for sale sign in it that said this car is for sale to the public, in which case it became illegal. So you have conduct that is permissible unless you then, on top of that conduct, engage in protected commercial speech or hold the car out as for sale. And the court found that that was a regulation of speech. Likewise, the Sixth Circuit found the same in Parker, a case that we cite in our briefs, where the actual language in Parker, and this really gets to the heart of your concerns, in Parker, the actual language is holding yourself out to the public. And Abramson out of the Eleventh Circuit, which Judge Stafford's probably familiar with, again, the language was holding yourself out to the public. So this court has already held, and other circuits have as well, the language holding yourself out to the public is, in fact, commercial speech that has to be analyzed through the lens of commercial speech. And that's really evidenced here by how the state has enforced the law. Well, I should also mention, though, the Ninth Circuit made the same holding just a few months ago in Valle del Sol v. Whiting that the act of driving a car and blocking traffic is, in fact, to be analyzed as commercial speech. When on top of that, the solicitation of day labor is what's prohibited. So these acts that couple conduct, but only make the conduct illegal if you then hold yourself out, if you speak, if you propose a commercial transaction, are typically analyzed as central Hudson cases. If not, since 2011, under a higher standard, which is the standard the Supreme Court has set forth in Sorrell, where it is really made clear and broader, arguably, the protection of commercial speech and the understanding of what is commercial speech, they're talking about marketing. So the meaning of to the public is to the people in the nation as a whole, holding out to the public at large. So what that means is that an individual transaction where I'm simply buying precious metals from you is not me holding myself out. Maybe me holding myself out to you, but it is not to the public. And it's also a business transaction, which is the fourth part of the central... So anytime you hold yourself out to the public to be engaged in a particular occupation, it violates the free speech clause? No, no, Your Honor, not necessarily at all. But what I would say is this, if it is legal to be a plumber in Ohio, but then you hold yourself out to the public as willing to do plumbing, and only then does the licensing regime come in, then the case is just like Peg and B. Frucci. It is just like, more importantly, Thompson v. Western States Medical Center, where you are only subject to the licensing if you promote your business. And that's exactly what the case was before the Supreme Court and Thompson. And that's also the case in Sorrell in 2011. So long as you didn't market, you weren't subject to the restrictions. But if you market, then you are. Now, certain professions, real estate, law, the speech is inextricably entangled in the profession. But in other professions, such as this, that's simply not the case. So we do have to make a distinction here under your submission between those professions where the speech is connected with the profession itself. Lawyers do talk, for example, to other lawyers in courts. And so if it's combined with holding yourself out, it violates the First Amendment. That's what you're saying. Well, I think that could be the case. Of course, we don't have to necessarily make that distinction in this case. But that easily could be the case if I stand up here and make an oral argument to this court. Presumably, I'm holding myself out to both this court and also to the public as a licensed attorney. But you're not doing that in the precious metal dealers case. They're not holding themselves out as a licensed precious metal dealer. They're just saying, we buy gold. Those we buy gold signs are really the heart of what's at issue here. Can you put those signs up or not? And to be clear, the Department of Commerce only enforces the law in response to protected speech. Their default template says, you posted signs. Therefore, you violated the law. Their chief enforcement officer on this, Ryan Landis, testified that advertising is the violation of the Precious Metal Dealers Act. He takes pictures of the signs and then attaches that as evidence because that is the evidence that you violated the act, not the purchasing. Let me ask you this. Most of these state licensure schemes are justified based on protecting the public health, safety, and welfare. And I guess that would be balanced against whatever interest the business owner that's being regulated wants to bring up. What's your view of the state's interest in whatever public health or safety or interest that they're seeking to protect in the public interest? Do you have any view of that? Yes, Your Honor, we do. The state cannot protect those interests through only regulating those who promote their businesses to the public, which is what we have here. And that's why the statute does not directly advance those interests as required by Central Hudson because it leaves unregulated and the public unprotected from any business that simply does not advertise or promote their business to the public as willing to purchase precious metals. And it also exempts and allows to advertise. I don't know if you want to say they can't protect anybody because the statute doesn't protect everybody. I was more asking you to address the interests that are being protected here, if you had a view on that. And you don't have to have a view. Sure, Your Honor. We have conceded throughout the litigation that the state has a legitimate interest in protecting against theft or fraud, et cetera. It just doesn't, it cannot advance that interest by only regulating one group of people based upon whether they speak or they don't speak. And so that's where we get into the real trouble. And what you see, you do see huge exemptions for jewelers, for example. They're exempt from the act. They can buy, a jeweler can buy 10 tons of precious metals without being licensed at all. While a coin dealer can only buy 10 ounces if he puts a sign in his window that says- Equal protection argument out of that? Well, really, Your Honor- I thought you were making a First Amendment argument. It's been recognized as a First Amendment argument in Vidas del Sol. Sorrel is a great case that explains that when you single out one kind of person based upon their speech, or when the statute is under-inclusive, it demonstrates that the state interest is not directly advanced through the means that you're using, or that the state interest is also not effectuated in a narrowly tailored way. And that's what you have here. Because you're attacking only those who advertise, the statute is not directly advanced. It's not narrowly tailored. It singles out certain people based upon their identity, which is strict scrutiny under Sorrel. It's content-based because only if you hold yourself to the public as willing to purchase precious metals are you subject to the burdens versus if you say other things you are not. And it also criminalizes speech. It's literally the case, Your Honor, that- Actually, I might want to wind up since your red light's been on a while. Yes, thank you. This is my last point, Your Honor, is that literally it is the case that if you put that sign in your window, you can be subject to a felony under this statute. And that triggers strict scrutiny. Whereas if you don't put that sign in your window, you're not subject to a felony. And that's an important consideration for this court. For these reasons, we ask that you review the 28-page thorough decision of the district court and approve that ruling. Thank you. Thank you. Any rebuttal? Thank you, Your Honors. Your Honors, counsel answers Judge Merritt's question that not all holding out involves commercial speech. That is exactly their arguments. That's exactly the position they're taking. That any such holding out to the public would violate commercial speech. And that's simply not the law. The state has no burden of proof to justify its act here under First Amendment analysis unless the court finds that the state is regulating speech. The statute regulates conduct. It's holding out. It's a critical distinction that Liberty Coins has not made. And unfortunately, the district court muddled and got wrong. Holding out is not necessarily always speech. If it is, then the General Assembly would have had no need to cite as illustrations advertising and soliciting customers. The statute says by any means of holding out, you are subject to that, including, and what it doesn't say, but I think a reasonable inference is, but not exclusively, but including, but not limited to advertising commercial speech. It is not a regulation of advertising. It is not a regulation of commercial speech. It's a regulation of conduct. Being engaged in the business, holding yourself out. It reaches a broader, there are broader interests, as you were asking Judge Clay. What are the interests here? It is protecting, it's a public protection. It's protecting the public. Especially as the prices of gold rise, there's greater opportunities for theft. There's more reports coming in. We tried to introduce evidence. The district court didn't look at it. But it's really undeniable that theft of items with precious metals is on the rise. And the state certainly has an interest in trying to curtail that. Judge Stafford, you mentioned the holding period. It's actually five days a regulated dealer has to hold on before he would resell that. The fine is $10,000, not $100,000. It's a $10,000 fine under the statute for a maximum penalty for selling precious metals without a license. The Sorrell case here, which is relied upon by Appley and Amici as well, has no application here. There's no evidence in the statute that the state is censoring viewpoints or favoring other competitors or itself. Ohio is not a market participant in selling precious metals. There's no censorship here. Ohio has no interest in regulating the content to say, well, Sorrell kicks in because you regulate a particular profession or a particular holding out. It takes that way out portion. And that should have no consideration here. And finally, the council indicated that Ohio only enforces the act in response to speech. It's not true. It does it on complaints, sometimes from anonymous tips or verified tips, undercover buys. In one case, a photo, an agent took a photo showing that they were operating. It's not a case of enforcing it on the basis of speech. The district court erred in finding the act facially and in joining the act on the basis of facial invalidity. You should reverse. Thank you, Your Honors. Thank you very much. The case is submitted.